Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 4296 | DATE | Aug. 14, 2002 |
| CASE TITLE | B.E.L.T. v Lacrad International Corp., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing held and continued to
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Memorandum opinion and order entered. Accordingly, defendant's motion to dismiss counts XVII through XXI is granted.

■ for further details see order attached

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 19 2002 date docketed | |
| | Docketing to mail notices. | U.S. DISTRICT COURT | docketing deputy initials | 194 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

B.E.L.T., INC., EUROPEAN AMERICAN )
BANK, AMERICAN EQUIPMENT LEASING, )
THE CIT GROUP/EQUIPMENT FINANCING, )
INC., REGIONS BANK and WINTHROP )
RESOURCES CORPORATION, )
)
          Plaintiffs, )
) No.   01 C 4296
    v. )
) Judge Robert W. Gettleman
LACRAD INTERNATIONAL CORPORATION, )
an Illinois corporation and RODNEY T.E. DIXON, )
DARCAL DIXON, GLENN E. MILLER, KIM W. )
MILLER, BETHEL COMMUNITY OUTREACH )
MINISTRIES, CHENISE WHITEHEAD, FIRST )
UNION NATIONAL BANK, FEED THE )
CHILDREN, INC., BISHOP LEO LEWIS, E.C. )
REEMS MINISTRIES, CHRISTIAN JEW )
FOUNDATION, KIMBERLY STRATTON )
JEHOVAH JIREH MUSIC, ALBERT )
DEGENOVA, TOTAL PERIPHERALS, INC., )
MICHAEL WHITFIELD, JAMES T. BORDEN, )
NU-CONCEPTS MARKETING, LIVINGSTONE )
ENTERPRISES, ROBERT SMALLWOOD, )
DANIEL WEATHERSPOON, BISHOP NORMAN )
WAGNER and MT. CALVARY PENTECOSTAL )
CHURCH, JIM JOHNSON and COMPAK )
CORPORATION, PACIFIC ATLANTIC )
LEASING, a/k/a El Camino, DELTA HARDMAN, )
JAMES FOSTER, TRICIA'S FASHIONS, UNICO )
DESIGNS, LTD., DIVINE ORDER and WILLIAM )
BLANK, )
)
          Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs and the court-appointed receiver for Lacrad Int. Corp. ("Lacrad"), Alex Moglia ("the receiver"), filed a 44-count fourth amended complaint, alleging various types of fraud,

fraudulent conveyance, and unjust enrichment claims against a number of individuals and entities. In Counts XVII-XXI of the complaint, the receiver seeks recovery against First Union ("defendant") for the alleged receipt of funds fraudulently obtained from Lacrad, as well as for fraud, scheme to defraud, fraudulent conveyance, conversion, and unjust enrichment. Defendant has filed a motion to dismiss Counts XVII through XXI for lack of standing or, in the alternative, for failure to state a claim pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6). For the following reasons, defendant's motion is granted.

## **BACKGROUND**

Defendant is a national bank. In 1997, defendant extended a credit line in excess of $2 million to Lacrad and issued corporate credit cards to several Lacrad employees. Between 1998 and 2000, Lacrad accumulated more than $4 million in credit card charges. Within this period, Lacrad came to be in arrears to defendant for over $2 million, but managed to make consistent payments toward the debt. According to the receiver, Lacrad's business during this period consisted of conducting fraudulent schemes. The receiver alleges that defendant became a creditor when Lacrad amassed debt on the cards, and that defendant continued to accept Lacrad's payments toward the debt after learning that they consisted of money fraudulently obtained from other creditors. By continuing to collect these payments, and by failing to report Lacrad's allegedly illegitimate business scheme, the receiver contends, defendant allowed Lacrad to continue to fraudulently obtain money from its other creditors, or, at the very least, to continue to fraudulently convey the funds it had already received from other creditors.

Specifically, in Count XVII, the receiver alleges, on information and belief, that defendant committed fraud by giving Lacrad "time to generate funds from its unlawful schemes

2

to repay First Union," and by receiving "$1.5 million from Lacrad in 2000 and 2001" although it "knew that the funds it received were not funds of Lacrad." "By knowingly receiving the funds of Lacrad which were unlawfully obtained," the receiver continues, "defendant committed fraud."

In Count XVIII, the receiver alleges that defendant "participated in Lacrad's scheme to defraud creditors by receiving payments from Lacrad knowing that they were the proceeds of fraudulent activities." By receiving over $4 million from Lacrad, which allegedly came from "the funds of other creditors procured by Lacrad through the use of false financial statements and other illicit activities," the receiver alleges that defendant knowingly participated in Lacrad's fraudulent scheme.

In Count XIX, alleging conversion, the receiver asserts that "defendant converted in excess of $4 million of funds procured from third parties through the fraud of Lacrad." In Count XX, alleging fraudulent conveyance, the receiver claims that "the payments defendant received from Lacrad in the period 1999-2000 constitute fraudulent conveyances in that they were the proceeds of fraudulent loan activities of Lacrad." Lastly, in Count XXI, the receiver alleges that defendant was unjustly enriched "in an amount in excess of $4 million."

## DISCUSSION

In its motion, defendant asserts that the receiver lacks standing to bring these claims. The court agrees. A receiver can bring claims only on behalf of the entity he has been appointed to represent. See Scholes v. Schroeder, 744 F. Supp. 1419 (N.D. Ill. 1990). In Scholes, Judge

Shadur[1] explained that, according to the Supreme Court, "a receiver or like surrogate cannot pursue claims that belong, not to the receivership entity as such, but rather to those who may have an ultimate derivative interest in the estate." 744 F. Supp. at 1422 (citing Caplin v. Marine Midland Grace Trust Co. of New York, 406 U.S. 416, 429-34 (1972)). The court then held that a receiver designated for certain corporate entities could not bring claims on behalf of investors of the corporations who hoped to recover damages for fraud. The court emphasized: "fraud on *investors* that damages those *investors* is for those *investors* to pursue - not the receiver," and "by contrast, fraud on the *receivership entity* that operates to *its* damage is for the *receiver* to pursue." Id. (emphasis in original). This rule was affirmed in Troelstrup v. Index Futures Group, Inc., 130 F.3d 1274 (7th Cir. 1997), in which the Commodities Futures Trading Commission brought suit against a commodities trader who allegedly defrauded investors. In Troelstrup, the Seventh Circuit held that the receiver lacked standing to bring a third-party complaint on behalf of the defrauded investors "because he was not *their* receiver." Id. at 1277.

The instant case is analogous to Scholes[2] and Troelstrup. While the receiver's activities in the instant action are certainly aimed at benefitting Lacrad's creditors, the receiver was appointed by this court "as the receiver for Lacrad International Corporation ('Lacrad')" and

---

[1]Contrary to defendant's representation in its memorandum in support of its motion, Scholes v. Schroeder was decided in the Northern District of Illinois, not in the United States Court of Appeals for the Seventh Circuit.

[2]The receiver asserts that Scholes v. Schroeder is inapplicable to the instant case because of the 7th Circuit's later decision in Scholes v. Lehman, 56 F.3d 750 (7th Cir. 1995) ("Lehman"), in which the receiver was found to have standing to bring his claims. Again the court disagrees with the receiver. The receiver in Lehman had standing to bring his claims because they were claims belonging to the receivership entity and not to some other third party. Thus, the Seventh Circuit's finding in Lehman in no way invalidates Judge Shadur's conclusion in Scholes that a receiver cannot bring claims on behalf of an entity that he has not been appointed to represent.

4

stands in Lacrad's shoes for purposes of enforcing Lacrad's rights.[3] Thus, the receiver has not been appointed to represent Lacrad's creditors, and he therefore cannot bring claims that only they have standing to bring.

Lacrad has alleged no claim against a creditor such as defendant from whom it borrowed and repaid money, although Lacrad's other creditors may have such a claim. The court therefore finds that the receiver lacks standing to bring the instant claims against defendant. Having reached that conclusion, the court finds it unnecessary to examine defendant's proposed 12(b)(6) and 9(b) bases for dismissal, and grants defendant's motion to dismiss Counts XVII through XXI.

## CONCLUSION

For these reasons, defendant's motion to dismiss Counts XVII through XXI is granted.

**ENTER:** August 14, 2002

Robert W. Gettleman
United States District Judge

---

[3]In his response to defendant's motion, the receiver focuses on the court's statement in its June 12, 2001, order that the receiver was appointed "on behalf of all the creditors." However, as noted above, although the receiver's actions are aimed to benefit Lacrad's creditors, the receiver was clearly appointed "as the receiver for Lacrad," not as receiver for Lacrad's creditors or any other entity.

5